# IN THE COURT OF APPEALS OF IOWA

No. 15-1685
Filed January 13, 2016

**IN THE INTEREST OF K.B.,**
      **Minor Child,**

**B.D., Mother,**
      Appellant.

_____

Appeal from the Iowa District Court for Buena Vista County, Mary L. Timko, Associate Juvenile Judge.

The mother appeals from the order terminating her parental rights to one child. **AFFIRMED.**

Karla J. Henderson of Henderson Law Firm, Holstein, for appellant.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee.

Theresa Rachel of Deck Law, L.L.P., Sioux City, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Becky appeals from the order terminating her parental rights in her child K.B. Becky contends (1) the juvenile court erred in finding termination of her parental rights was in the child's best interest and (2) the juvenile court erred in placing the child in the custody of the Iowa Department of Human Services ("IDHS") for purposes of adoption when Shirley, the child's maternal grandmother, was available to adopt the child or serve as the child's guardian.

I.

Becky has mental-health and substance-abuse issues that preclude her from taking adequate care of her children. K.B. is the third of Becky's four children and is the only child at issue in this proceeding. Becky gave up her youngest and oldest child for adoption to the same family. Becky's second child, A.D., resides with her father in New York. The circumstances under which A.D. ended up in New York are interrelated with K.B.'s story.

In October 2013, Becky left K.B. and A.D. with a couple she met at work, the Kellers. Two days later, A.D.'s father, concerned about A.D., picked her up and took her with him to New York where he resides.[1] A.D. continues to reside with her father. A few days later, Becky went back to the Kellers and took K.B. home with her. Three days later, Becky was arrested, and she left K.B. in the care of her paramour. Becky's paramour then called the Kellers and asked them to take care of K.B. The Kellers agreed to do so. After a week without any

_____

[1] A.D.'s father had her examined by a doctor when he noticed injuries on her face and back. A.D. told the doctor Becky and her paramour had hit her with a belt. The Kellers reported that K.B. would cower and run away whenever Mr. Keller removed his belt.

contact from Becky, the Kellers called her to inquire about K.B. Becky said she would pick K.B. up the next day. Becky failed to do so. After another week had passed, the Kellers contacted IDHS, and K.B. was removed. The court placed K.B. in the custody of IDHS for foster care placement, where he has remained throughout these proceedings. K.B. was adjudicated a child in need of assistance ("CINA") in December pursuant to Iowa Code section 232.2(6)(a) (abandonment), (b) (physical or sexual abuse or neglect), and (c)(2) (failure to supervise) (2013).

In May 2014, the juvenile court entered a permanency order giving Becky an additional six months to work toward reunification with K.B. In its March 2015 permanency modification order, the court found the additional time for reunification "has not proved positive." Becky had moved out of her apartment and moved in with her mother, with whom Becky has a turbulent relationship. Becky's participation in therapy was poor. She continued to associate with criminals and substance abusers. Her behavior had become increasingly concerning, to the point it was unclear if she "was actually exhibiting extreme paranoia and having some kind of psychotic episode." Consequently, the court ordered the State to file a petition to terminate Becky's parental rights.

After a hearing over two days in August 2015, the court ordered Becky's parental rights to K.B. terminated pursuant to section 232.116(1)(d) (physical abuse, services have not corrected circumstances), (e) (failure to maintain significant and meaningful contact), (h) (child three or younger cannot be returned to parent's care at present time), and (i) (physical abuse posed

significant risk to child, services would not correct conditions within reasonable time) (2015).  Concerning the child's best interests, the court noted:

> There is no indication from the evidence exactly where Becky will be mentally, emotionally, financially, or physically on a consistent basis enough to ensure that [K.B.]'s emotional, physical, and emotional health and basic needs will be met on a consistent basis if he is placed in the care of Becky alone.  . . .
> Becky has made progress at times, and she has been applauded for that progress.  Her progress was recognized and she was given an additional six months, which turned into eight months, to work towards reunification with [K.B.].  Unfortunately, that time was not enough to warrant the return of [K.B.] to her care at this time.  This is a pattern of parenting that must cease.  . . .

The court considered the effect of termination on the parent-child bond and concluded "the history of this case and [K.B.]'s needs override the bond as it stands to date."  The court also considered and rejected a guardianship for K.B., given his age and need for "a steady, long-term, committed parent."

II.

We review de novo proceedings terminating parental rights.  *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).  While giving weight to the findings of the juvenile court, our statutory obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come before.  We will uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination.  *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).  Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence.  *See id.*

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *See id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude termination. *See id.*

III.

In an all-inclusive statement of her first issue on appeal, Becky contends the court erred in finding clear and convincing evidence to support the grounds for termination, it was not in K.B.'s best interest to have Becky's parental rights terminated, and the closeness of the parent-child bond weighs against termination. *See* Iowa Code § 232.116(1)-(3); *In re P.L.*, 778 N.W.2d at 40 (setting forth the three-step analysis).

Where, as here, the court terminates a parent's rights on more than one statutory ground, we may affirm if any of the grounds is supported by clear and convincing evidence. *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). We focus on paragraph (h), requiring proof of several elements, including proof the child could not be returned to the <u>parent's</u> custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4). A child cannot be returned to a parent's care if the child would remain a CINA or would be at risk of

adjudicatory harm. *See In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995), *overruled on other grounds by In re P.L.*, 778 N.W.2d at 39; *see also In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992).

On de novo review, we conclude there is clear and convincing evidence supporting this ground for termination. First, Becky tacitly admits the child could not have been returned to her care at the time of the termination hearing, arguing there was not "clear and convincing evidence that K.B. could not be returned to his mother <u>or to his grandmother as a relative placement for purposes of guardianship or adoption at this time</u>." Most, if not all, of Becky's petition on appeal discusses the care Becky and Shirley, together, could provide for the child. Nowhere does Becky argue the child could be returned to her care. Whether the grandmother was a suitable placement is immaterial to the question presented. Second, Becky's mental-health and substance-abuse issues precluded return of K.B. to her care. Becky has been diagnosed with bipolar disorder and ADHD. At times, she takes her prescribed medications and attends therapy. However, she stops taking her medication and stops attending therapy and instead uses marijuana, testifying, "I found a way to cope on my own through the use of marijuana. Marijuana makes me mellow. It makes me more clear headed." The evidence shows Becky's inability to manage her mental health and inability to refrain from substance abuse places K.B. at risk while in her care. Accordingly, we affirm the ground for termination pursuant to section 232.116(1)(h).

Considering K.B.'s best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see In re P.L.*, 778 N.W.2d at 40. We consider both the child's immediate and long-term interests and what the future likely holds for the child if returned to a parent. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Insight into what the future likely holds for a child if returned to a parent is gleaned from evidence of the parent's past performance because it may be indicative of the quality of future care the parent is capable of providing. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012); *In re J.E.*, 723 N.W.2d at 798. We give substantial weight to case history records in assessing a parent's ability to provide care in the future. *See In re S.N.*, 500 N.W.2d 32, 34 (Iowa 1993).

Becky has unresolved mental-health and substance-abuse issues that affect her ability to provide consistent care for K.B. She has not demonstrated the ability to live on her own for any period of time. IDHS and the juvenile court noted concerns with Becky's associates. Her view that illegal drug use is effective mental-health treatment does not bode well for her ability to care for K.B. We conclude, after considering the statutory factors, *see* Iowa Code § 232.116(2), that termination of Becky's parental rights is in K.B.'s best interests.

Becky contends the court should not have terminated her parental rights due to the strength of the parent-child bond. *See id.* § 232.116(3)(c). The "exceptions" to termination are permissive and not mandatory. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 474 (Iowa Ct. App. 2011). Based on the circumstances before us, we conclude that the parent-child bond should not preclude termination of Becky's parental rights. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) (considering the parent-child bond and centering on "whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the mother]'s inability to provide for [the child]'s developing needs").

Becky also contends the court erred in placing K.B. with IDHS to pursue adoption when the maternal grandmother "was ready, willing, and able to provide full care of K.B., up to and including guardianship or adoption." She argues "such a change in custody is not in K.B.'s best interests." We first note there was no change in custody. When K.B. was removed in November 2013, the court placed him in the temporary custody of IDHS. The December 2013 adjudication order placed him in the custody of IDHS. The February 2014 disposition order placed him in the custody of IDHS. Subsequent orders continued that placement. The only change in the permanency order on appeal was the permanency goal of the custody with IDHS—changing from foster placement to adoption.

Becky asserts her mother is ready, willing, and able to care for K.B., and the court should have placed him with his grandmother. A November 2014 home study of the grandmother's home recommended that she be considered for placement. By the time of the termination hearing in August 2015, the paternal grandparents had moved to intervene and to be considered for guardianship. The foster parents also had asked to intervene. The court concluded "a guardianship for a child this age is not appropriate," noting a guardianship that could last sixteen years "is not in the child's best interest."

A guardianship is not a legally-preferable alternative to termination followed by adoption. *See In re L.M.F.*, 490 N.W.2d 66, 67-68 (Iowa Ct. App. 1992). Nor should an appropriate decision to terminate a parent's parental rights "be countermanded by the ability and willingness of a family relative to take the child." *See In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). We conclude the court acted properly under the circumstances.

IV.

For the foregoing reasons, we affirm the order terminating Becky's parental rights to K.B. We also affirm the permanency order placing K.B. in the custody of IDHS for adoption.

**AFFIRMED.**