**In the Interest of S.N., S.N., and A.N., Minor Children,**

**S.W.N., Father, Appellant,**

**State of Iowa, Appellee.**

**No. 92–401.**

Supreme Court of Iowa.

May 19, 1993.

33

Steven C. Pals of Klay, Veldhuizen, Bindner, De Jong & Pals, Orange City, for appellant.

Larry G. Postma, Sheldon, guardian ad litem for minor children.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Charles K. Phillips, Asst. Atty. Gen., and Dennis Cmelik, Asst. County Atty., for appellee State.

Considered by LARSON, P.J., and SCHULTZ, NEUMAN, SNELL and ANDREASEN, JJ.

SNELL, Justice.

This is a termination of parental rights case on further review from a decision by the Iowa Court of Appeals. The district court for O'Brien County determined that the parental rights of both S.W.N. (father) and J.N. (mother) should be terminated. J.N. dismissed her appeal which mooted the issues raised by her. On appeal by S.W.N., the court of appeals reversed the termination of his parental rights and remanded the case for placement of the children in long-term foster care. We now vacate the decision of the court of appeals and affirm the judgment of the district court.

Appellant S.W.N. was born on April 28, 1961. At the age of seventeen, he suffered a serious head injury in an automobile accident which resulted in the removal of a portion of his frontal lobe. As a result of these occurrences S.W.N. now suffers from diminished judgment, impulsiveness and a decreased mental capacity.

S.N., S.N., and A.N. are the natural children of S.W.N. and J.N. They were born on November 19, 1987, May 14, 1989, and November 12, 1990, respectively. On August 7, 1990, the district court adjudicated S.N. and S.N. to be children in need of assistance on the ground that the children had suffered or were likely to suffer harmful effects as a result of conditions created by their parents. The third child, A.N., was found by the district court to be a child in need of assistance on the same ground on December 4, 1990.

On April 15, 1991, the State filed a petition for the termination of both the father's and mother's parental rights as to S.N. and S.N. On August 29, 1991, the State petitioned to terminate the parental rights also as to A.N. The State pleaded that the parents' rights should be terminated pursuant to Iowa Code section 232.116(1)(g) (1991).

On February 10, 1992, the district court terminated both parents' rights to the three children. While stating that it was clear that the father S.W.N. loves his children, the court found that the children could not be protected without the termination.

I. The scope of review in this termination case is de novo. *In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981). The termination of parental rights code section under which this matter proceeds is section 232.116(1)(g) (1991). It provides authority to terminate parental rights when the State has proven the following: (1) the child is three years of age or younger; (2) the child has been adjudicated a child in need of assistance pursuant to section 232.96; (3) the custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least six months of the last twelve months; and (4) there is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

■ Appellant S.W.N. argues that the State has failed to prove the final element in this section in that it failed to prove that the children cannot be returned to his care within the meaning of section 232.102. A child cannot be returned to parental care within the meaning of that section if the child would be placed in danger of physical abuse or any other harm that would warrant a child in need of assistance adjudication. Iowa Code § 232.102(5). The threat of a CINA harm will warrant continuance of the child in foster care and justify a termination of parental rights under section 232.116(1)(g). It need not be the harm that led to the child's initial out-of-the-home placement. *In re C.M.T.,* 433 N.W.2d 55, 56 (Iowa App.1988). The threat of harm must be proved by clear and convincing evidence. "Clear and convincing" evidence connotes the establishment of facts by more than a preponderance of evidence but something less than establishing a factual situation beyond reasonable doubt. *In re Henderson,* 199 N.W.2d 111, 121 (Iowa 1972).

■ Central to a determination of this matter are the best interests of the child. *Dameron,* 306 N.W.2d at 745. The best interests are to be determined by looking at the child's long range as well as intermediate interests. The court is to consider what the future likely holds for the child if

the child is returned to the parents. *Id.* Insight for that determination is to be gained from evidence of the parents' past performance, for that performance may be indicative of the quality of future care the parents are capable of providing. *Id.* Case history records are entitled to much probative force when a parent's record is being examined. *Harter v. State,* 260 Iowa 605, 609, 149 N.W.2d 827, 829 (1967).

■ II. S.W.N. focuses much of this appeal on issues of whether he complied with the case plan, whether termination of his parental rights can be predicated on his mental injury, and whether it can be based on the children's developmental delays. The State forthrightly admits that it does not contest many of the legal points made by S.W.N. in this regard. Noncompliance with a case plan is not in and of itself a ground for termination of parental rights. Neither is mental illness in and of itself a ground for termination. However, a parent's mental health does not constitute a defense against termination of parental rights where the condition prevents the parent from carrying out his or her duty of caring for the child. *In re A.C.,* 415 N.W.2d 609, 614 (Iowa 1987), *cert. denied,* 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 702 (1988).

■ No one doubts in this record the love that S.W.N. has for his children. S.W.N. has done what he can to provide the needed care for his children given the severe limitations from which he suffers due to the injury sustained in his automobile accident. Unfortunately, the testimony indicates that there is not a reasonable hope for a continued improvement in that condition. S.W.N. has been diagnosed as having organic personality syndrome and organic hallucinosis. The outcome of this condition is "very limited abilities in the areas of problem solving, insight and judgment." The psychological assessment of S.W.N. was that he is emotionally labile, impulsive and without insight. He makes little effort to deal with the emotional complexities of life, and has few of the resources necessary to make significant changes in his life. The assessment continued, that in spite of

his motivation, he is unlikely to be able to provide adequate parenting or attention to his children.

The district court found with regard to S.W.N.:

Testing for organic brain function reveals severe frontal lobe damage resulting in a deficit in accuracy in his perceptions. He is unable to be flexible, his judgment is diminished. He is highly impulsive. He exhibits poor logic, all of this is borne out by MMPI, Rohrshach, and Bender–Galstalt tests. These deficiencies cannot be overcome with education, training or medication. He constitutes a threat to the physical safety of his children. He clearly loves his children, but he is not a good parent. His father has attempted to coach him regarding his handling of the children, but this has been with very limited results. He is not likely to accept anyone's advice. It is the strongly held opinion of both his father and his aunt, in whose employ he is, that for the good of the children the parental rights should be terminated.

The record shows that the children were in definite need of help. S.N. the oldest child was thirty-four months of age chronologically at the time of testing and was ten months delayed cognitively with consistent delay in motor skills and a four-month delay in social skills. S.N. the middle child was sixteen months of age chronologically and was functioning at the eight-month level of performance. This child was at the fifteenth-month level of motor skills and the ten-month level in social skills at that time.

S.W.N. tends to minimize his own problems, believing that he can care for the children. He incorrectly assumed that his relatives would support him in his effort to gain custody of the children. Both his father and his aunt for whom he worked testified that they believed that it was in the children's best interests to terminate the parental rights. At trial, the psychologist who did the assessments testified pessimistically as to his capacity to properly parent. The social worker for the department of human services testified and recommended termination. Although S.W.N. was thought to be a good worker and put in long hours of work on a regular basis, he was nevertheless beset by severe money problems. S.W.N. and his wife had many outstanding bills, among which was $2000 owed to his two aunts.

III. The court of appeals decision heavily stressed the love and bonding that S.W.N. has without question for his children. It believed that the continued relationship of S.W.N. with his children is imperative to the children's proper development. Based on this belief, the court determined that the children's best interests are served by continuing long-term foster care and extended supervised visitation rights for S.W.N.

The problem with this solution is that the long-term foster care for these children, ages five, three, and two, may well be thirteen to fifteen years. The State believes that the consequence of such a long period of foster care, which amounts to permanent foster care in this case, is contradictory to precedents established by this court. We agree. We have said that a child should not be forced to endlessly suffer the parentless limbo of foster care. *In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990). To continue to keep children in temporary foster homes is not in their best interests. *In re J.L.P.*, 449 N.W.2d 349, 353 (Iowa 1989). The amount of time normally for children to be in foster care is prescribed by the termination statute. Cases which extend that time are viewed with a sense of urgency. *In re A.C.*, 415 N.W.2d at 614. There are times when extensions are appropriate, but in considering that, a judge must bear in mind that if an extended plan fails, that time must be subtracted from an already shortened life in a more permanent home. *Id.* The legislature has made a categorical determination that the needs of a child are promoted by termination of parental rights in cases meeting the criteria established by the legislature. *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990).

In *In re J.W.D.*, 456 N.W.2d 214, 218 (Iowa 1990), we said:

We have in the past stated "mental disability, standing alone is not a sufficient reason for the termination of the parent-child relationship, but it is a contributing factor to the inability to perform the duties of a parent." *In the Interest of Wardle,* 207 N.W.2d 554. Thus, mental disability is a proper factor to consider in determining whether a child is neglected to the point where his or her interest and welfare require termination. *In the Interest of A.M.S.,* 419 N.W.2d 723 (Iowa 1988). In *A.M.S.* the court stated that termination was appropriate when the disabled parent lacks the capacity to meet the child's present needs as well as the capacity to adapt to the child's future needs. Iowa Code section 232.116(2)(a) states that in considering a termination of parental rights such consideration may include whether the parent's ability to provide the needs of the child is affected by the parent's mental capacity or mental condition.

We are faced in this case with the fact that rehabilitation is not possible so that an improved parent-child relationship is not a reality. We are wholly sympathetic to the circumstances of S.W.N. which, despite his best efforts, prevent him from providing the care and nurturing that his children require. Regrettably, neither he nor anyone else can change those circumstances such that the likelihood is in any way foreseeable that S.W.N. could provide the care needed. Under these circumstances, permanent long-term foster care is not a viable option in considering the best interests of the children. The record indicates that all three children would have good prospects for adoption. This opportunity for the development of their lives should not be permanently cut off.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**