## IN THE COURT OF APPEALS OF IOWA

No. 18-0072
Filed March 21, 2018

**IN THE INTEREST OF A.H.,**
**Minor Child**

**J.H., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Dickinson County, David C. Larson, District Associate Judge.

A father appeals the juvenile court order terminating his paternal rights. **AFFIRMED.**

Michael H. Johnson of Johnson Law Firm, Spirit Lake, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Thomas E. Bjornstad of Bjornstad Law Office, Spirit Lake, guardian ad litem for minor child.

Considered by Danilson, C.J., and Vaitheswaran and Bower, JJ.

**BOWER, Judge.**

A father appeals the juvenile court order terminating his parental rights. We find there was sufficient evidence to terminate the father's parental rights, the State made reasonable efforts, no exceptions should be applied to preclude termination, and termination is in the best interests of the child. We affirm the juvenile court.

## I. Background Facts and Proceedings

A.H. was born to A.M., the mother, and J.H., the father, in 2013. At the time of A.H.'s birth, A.M. was married to M.M.[1] A.H. came to the attention of the Iowa Department of Human Services (DHS) in April 2015. DHS was concerned about several incidents of domestic violence between the mother and father. The father had assaulted the mother on multiple occasions, including strangulation and an incident in which he assaulted the mother while she was holding the child. A.H. was adjudicated a child in need of assistance on August 10. The adjudicatory order placed A.H. in the custody of the mother.

Services were provided to both the mother and father. The juvenile court noted the mother's parenting skills "have significantly improved." Conversely, the father did not cooperate with services. He continued to struggle with domestic-abuse, substance-abuse, and anger-management issues. The father was incarcerated during the pendency of the case for felony domestic abuse and possession of a controlled substance with intent to deliver.

---

[1] The marriage between A.M. and M.M. has now been dissolved. M.M. filed a written consent to allow his parental rights to be terminated.

While in prison, the father participated in services to better himself, including attending narcotics and alcoholics anonymous, meetings with a substance-abuse counselor, continued interactions with DHS, working with a counselor to improve his parenting skills, anger-management classes, and continuing to stay in contact with A.H.

A termination hearing was scheduled for October 17, 2017. On December 27 the juvenile court terminated the father's parental rights. The father now appeals.

## II. Standard of Review

The standard of review in termination cases is de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Clear and convincing evidence is needed to establish the grounds for termination. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Where there is clear and convincing evidence, there is no serious or substantial doubt about the correctness of the conclusion drawn from the evidence. *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). The paramount concern in termination proceedings is the best interests of the child. *In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990).

## III. Sufficiency of the Evidence

The father claims there is not sufficient evidence in the record to support termination of his parental rights. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We will focus on section 232.116(1)(d) (2017).

In order to terminate parental rights, Iowa Code section 232.116(1)(d) requires:

> The court finds that both of the following have occurred:
> (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
> (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

The father claims the State failed to show the circumstances leading to adjudication continue to exist.

The father notes the no-contact order between himself and the mother is still in place, his support for the no-contact order, the end of his relationship with the mother, and several instances where the mother attempted to contact him and he refused. He also points out his engagement with services while in prison, including narcotics and alcoholics anonymous, anger management, and continued contact with A.H. Finally, the father claims there was no evidence of specific imminent harm to A.H.

However, the district court noted the father "has not cooperated with services and he has continued to have anger management issues as well as substance abuse issues. Ultimately, as a result of his anger management issues, domestic violence issues, and substance abuse issues, [the father] was placed in prison where he remains at the present time." The father received services from DHS and did not respond to them. While the father has made

progress on many of his issues leading up to the termination hearing, his efforts "are simply too late*." See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). Last minute efforts are insufficient for us to find lasting change has taken place. *See id.*

Additionally, the district court pointed out "Three founded child abuse assessments regarding [the father] were submitted into evidence, two of which list [A.H.] as the victim." One of the reports details the father's assault on the mother while the mother held A.H. A.H. receives play therapy "due to ongoing behavior issues, and [] has been referred for a mental health assessment in relation to concerns regarding trauma as a result of the domestic abuse" between the parents. We find the evidence was sufficient to terminate the father's parental rights under Iowa Code section 232.116(1)(d).

## IV. Reasonable Efforts

The father claims the State did not make reasonable efforts to avoid termination. Prior to the termination of parental rights reasonable efforts to reunite the parent and child are required to be made by the State. *In re T.C.*, 522 N.W.2d 106, 108 (Iowa Ct. App. 1994). If the parents are dissatisfied with the services, the parents are required to challenge the reasonableness of the services and efforts of the State prior to the termination hearing. *See In re C.D.*, 508 N.W.2d 97, 101 (Iowa Ct. App. 1993).

The father specifically claims the State did not provide him with visitation while he was incarcerated. However, the father does not claim he requested visitation, nor does the record show any request for visitation. The father has not properly preserved this issue for appellate review.

## V. Exceptions

The father claims termination of his parental rights should have been precluded as the mother has custody of the child and the bond between A.H. and the father is so strong termination would adversely affect the child. The father also claims he should be given additional time to work toward reunification. The juvenile court may decide not to terminate parental rights if any exception set out in Iowa Code section 232.116(3) is shown. "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011).

The father is currently in prison and is not scheduled to be released until November 7, 2018, although he claims he will be paroled sooner. He has an extensive history of domestic abuse and substance abuse. While he has enrolled himself in courses to address his shortcomings, his progress in key areas cannot be effectively determined while he is in prison. His history shows a pattern of failure to improve his behavior. We find the juvenile court properly declined to apply any of the exceptions.

## VI. Best Interests

The father finally claims termination is not in the child's best interests. After finding a ground for termination exists, we are to "consider the factors under section 232.116(2). Section 232.116(2) requires us to give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and

needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (internal citations omitted).

We find the child's best interests are served by termination. The father has not been able to show he has made real, significant, permanent progress. The father has been unable to address his issues of anger, domestic abuse, and substance abuse outside of a correctional facility. The best indication of a parent's future performance is past performance. *In re S.N.*, 500 N.W.2d 32, 34 (Iowa 1993). The father's past behavior indicates he will be unable to care for A.H. We find termination is in the best interests of the child.

**AFFIRMED.**