**IN THE COURT OF APPEALS OF IOWA**

No. 18-1536
Filed November 21, 2018

**IN THE INTEREST OF C.P. and L.P.,**
**Minor Children,**

**C.P., Mother,**
    Appellant,

**L.P., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D.

Fagan, District Associate Judge.

A mother and father appeal the order terminating their parental rights in their

two children. **AFFIRMED ON BOTH APPEALS.**

Amanda Heims, Council Bluffs, for appellant mother.

Vanessa E. Strazdas, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and Meredith Lamberti, Assistant

Attorney General, for appellee State.

Roberta J. Megel of State Public Defender Office, Council Bluffs, guardian

ad litem for minor children.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**McDONALD, Judge.**

Cathy and Lester appeal from an order terminating their parental rights in their two children, L.P. and C.P., pursuant to Iowa Code section 232.116(1)(e) and (f) (2018). Cathy and Lester challenge the sufficiency of the evidence supporting the statutory grounds authorizing termination of their respective parental rights. They also challenge the finding that termination of their respective rights is in the children's best interest. Cathy further argues the Iowa Department of Human Services (IDHS) failed to make reasonable efforts toward reunification when it did not conduct an IQ test on her to ensure she was provided services she could understand.

The standard of review is de novo. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). It is the State's burden to prove the grounds authorizing termination of a parent's rights by clear and convincing evidence. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "Where there is clear and convincing evidence, there is no serious or substantial doubt about the correctness of the conclusion drawn from the evidence." *In re A.H.*, No. 18-0072, 2018 WL 1433849, at *1 (Iowa Ct. App. Mar. 21, 2018).

We first address the sufficiency of the evidence supporting the statutory grounds authorizing termination of the parents' respective rights. Where, as here, the juvenile court terminates a parent's rights on more than one statutory ground, "we need only find termination appropriate under one of these sections to affirm." *In re J.B.L.,* 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). We focus on Code section 232.116(1)(f).

Iowa Code section 232.116(1)(f) authorizes the juvenile court to terminate the parent-child relationship upon clear and convincing evidence showing:

(1) The child is four years of age or older.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

"We have interpreted [the last element] to require clear and convincing evidence the children would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing." *In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

The record reflects the following. The family first came to the attention of IDHS following L.P.'s hospitalization due to respiratory distress. When screened for drugs, L.P.'s urine tested positive for amphetamine and methamphetamine. The parents admitted to using methamphetamine at home with the children present. They also admitted they allowed the children to remain under the supervision of others who were known by the parents to use methamphetamine. At the time, L.P. was six years old, was on the autism spectrum, and was nonverbal. C.P. was five years old. While he was more advanced than L.P., he also had significant developmental deficiencies. Both children were in need of medical, dental, and therapeutic attention. Neither child was enrolled in school. The parents were homeless.

The children were removed from the parents' care and adjudicated in need of assistance. The juvenile court ordered the parents to participate in family safety, risk, and permanency services. The parents were ordered to submit to substance abuse and mental-health evaluations and pursue any recommended treatment. The juvenile court also ordered the parents to obtain stable housing and employment to provide for the children. Initially, the parents seemed to make great strides in addressing the concerns giving rise to removal. However, they began to backslide. Despite the provision of services for almost two years, the parents failed to resolve the concerns giving rise to removal.

On de novo review, we conclude there was clear and convincing evidence the children could not be returned to the parents' care without being exposed to an appreciable risk of adjudicatory harm. First, the parents failed to resolve their substance abuse. The record reflects the parents initially addressed their methamphetamine use. They completed treatment. They were both sober for a period of time and provided negative drug tests. Shortly after leaving treatment, however, the parents relapsed and resumed using methamphetamine. The parents' continued substance abuse, and L.P.'s prior positive drug test results, demonstrate the children would be subject to harm if returned to the parents' care. *See, e.g., In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (noting drug addiction can render a parent unable to care for children); *In re K.K.*, No. 18-0943, 2018 WL 3650376, at *3 (Iowa Ct. App. Aug. 1, 2018) (affirming termination of parental rights where mother had long history of substance abuse); *In re L.B.*, No. 18-1017, 2018 WL 3650370, at *1 (Iowa Ct. App. Aug. 1, 2018) (affirming termination of parental rights where mother had long history of methamphetamine use "and ha[d] not

demonstrated [an] ability to maintain sobriety . . . outside a custodial setting"); *In re K.C.*, No. 18-0581, 2018 WL 3057888, at *2 (Iowa Ct. App. June 20, 2018) (affirming termination where mother had long history of substance abuse); *In re L.S.*, No. 17-1824, 2018 WL 540968, at *1 (Iowa Ct. App. Jan. 24, 2018) (providing a parent's untreated substance abuse can create a risk of harm to the children); *In re B.C.*, No. 17-0933, 2017 WL 4050975, at *1 (Iowa Ct. App. Sept. 13, 2017) (affirming termination where mother had history of drug abuse and limited success with treatment and other services); *In re R.P.*, No. 16-1154, 2016 WL 4544426, at *2 (Iowa Ct. App. Aug. 31, 2016) (affirming termination of rights of parent with history of drug abuse); *In re K.F.*, No. 14-0892, 2014 WL 4635463, at *3 (Iowa Ct. App. Sept. 17, 2014) (finding termination appropriate where, as here, "[a]lthough [the mother] has been involved with services concerning her children at least three times, she does not obtain any lasting benefit from those services"); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *3 (Iowa Ct. App. July 16, 2014) (affirming termination of parental rights when parent had history of unresolved substance abuse).

Second, the parents' substance-abuse and mental-health concerns precluded them from ministering to the needs of their children. The record shows the parents did not make provisions for the medical and dental needs of the children, who both needed medical and dental attention following removal. The parents failed to enroll the children in school. The parents failed to undertake any efforts to address the special needs of either child. Even when provided assistance during the pendency of the case, the parents showed they could not

meet the children's needs. Cathy and Lester missed thirty-three of thirty-six scheduled medical and therapeutic appointments with the children.

Third, the parents lacked shelter suitable for the children. Cathy and Lester resided in nine different locations in the fourteen months preceding the termination hearing. At the time of the termination hearing, Cathy and Lester had not obtained suitable housing; they were living at a transitional homeless shelter. Maintaining stable housing is one of the duties of parenting. *See In re A.W.*, No. 03-0779, 2003 WL 21544066, at *2 (Iowa Ct. App. July 10, 2003). The failure to obtain housing, under the circumstances, shows the children could not be returned to the parents' care at the time of the termination hearing within the meaning of section 232.102. *See In re M.W.*, 876 N.W.2d 212, 223 (Iowa 2016) (stating that inappropriate housing and inconsistent employment "reflect[ ] [a mother's] prior pattern of irresponsibility and lack of planning when it comes to her children"); *In re J.F.*, 13-1956, 2014 WL 667789, at *2 (Iowa Ct. App. Feb. 19, 2014) (affirming termination where mother changed residences ten times during pendency of case and lacked shelter at the time of the termination hearing); *In re R.C.*, No. 03-1134, 2003 WL 22092677, at *2 (Iowa Ct. App. Sept. 10, 2003) (finding, among other factors, a father's "history of unstable housing and employment" provided "evidence beyond a reasonable doubt" that the child could not be placed in his care).

Cathy also challenges whether reasonable efforts were made to reunify the family. As part of its ultimate proof, the State must establish it made reasonable efforts to return the children to their home. *See* Iowa Code § 232.102(9) (providing IDHS must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interest of the child"). "[T]he

reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the [I]DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The core of the reasonable efforts mandate is that the child welfare agency must make reasonable efforts to "facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). The nature of the reasonable efforts mandate is determined by the circumstances of each case. *See C.B.*, 611 N.W.2d at 493 (discussing scope of mandate).

Cathy's argument is as follows. In the month preceding the termination hearing, Cathy was administered an IQ test, which showed Cathy functioned at a fifth-grade level. Cathy argues IDHS's failure to administer the test sooner prevented IDHS from providing her with services she could understand. Cathy's claim regarding reasonable efforts is in tension with her argument regarding her ability to provide care for the children. On one hand, she argues she was not able to comprehend the services provided to her. On the other hand, she argues she has the mental and intellectual capacity to independently provide care for two children, including a special needs child. In noting the tension in the argument, we do not suggest Cathy's mental disability, in and of itself, is grounds to terminate her parental rights. It is well established "mental disability, standing alone, is not a sufficient reason for termination of the parent-child relationship." *In re K.F.*, 437 N.W.2d 559, 560 (Iowa 1989). However, mental disability can impact one's ability

to parent. *See In re C.N.G.*, No. 03-1717, 2003 WL 22900901, at *2 (Iowa Ct. App. Dec. 10, 2003).

Setting aside the tension in the argument, Cathy's claim is without merit. The record reflects Cathy was to make arrangements to take the IQ test and failed to do so until the month prior to the termination hearing. The responsibility for failure to have the test administered sooner is with Cathy and not IDHS. Further, even absent the testing, IDHS was aware Cathy might have developmental limitations, and IDHS tailored its communications and services to meet Cathy's needs. IDHS's efforts to tailor its communications and services to meet Cathy's needs was successful. Cathy testified she did not have difficulty understanding the requirements related to reunification. The issue in this case was not the failure to provide appropriately tailored communications and services, it was Cathy's failure to avail herself of the services provided. Cathy's failure to use the services provided defeats her reasonable-efforts claim. *See, e.g., In re B.G.*, No. 15-0732, 2015 WL 5996936, at *4 (Iowa Ct. App. Oct. 14, 2015) (holding the State established reasonable efforts where services were provided but the mother did not avail herself of the services); *In re D.L.*, No. 13-0645, 2013 WL 3458219, at *2 (Iowa Ct. App. July 10, 2013) (holding the State met its burden in making reasonable efforts where services were provided but not used); *In re B.B.*, No. 12-0807, 2012 WL 2408714, at *3 (Iowa Ct. App. June 27, 2012) ("Considering the number and variety of services offered or provided, the delays in or failure of services attributable to the mother, the age of the child, and the length of time the child has been removed from the mother's care, we find the State made reasonable efforts to reunite the mother with her daughter.").

We next address the parents' argument that termination of their respective rights is not in the best interest of the children. *See* Iowa Code § 232.116(2). When considering the children's best interest, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). We consider both the long-term and immediate interest. *See In re J.E*, 723 N.W.2d 793, 798 (Iowa 2006). Insight into what the future likely holds for a child if returned to the parents is gained from evidence of the parents' past performance. *See A.B.*, 815 N.W.2d at 778; *J.E.*, 723 N.W.2d at 798. We give substantial weight to case history records in assessing a parent's ability to provide care in the future. *See In re S.N.*, 500 N.W.2d 32, 34 (Iowa 1993).

We have little trouble concluding termination of these parents' respective rights is in the best interest of the children. As noted above, the parents have demonstrated an inability to minister to the basic needs of the children, including the need for shelter and education. The parents have demonstrated an inability to keep the children safe from physical harm, as evidenced by L.P.'s positive test for drugs. Despite the provision of services, these concerns remain. While the parents profess to love their children, "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). "It is simply not in the best interest of children to continue to keep them in

temporary foster homes while the natural parents get their lives together." *A.B.*, 815 N.W.2d at 778 (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997)).

Finally, Cathy contends the juvenile court should have exercised its discretion to preserve the parent-child relationship because "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). It was Cathy's burden to prove the statutory ground allowing preservation of the relationship notwithstanding the State's proof. We do not agree this ground militates in favor of preserving Cathy's relationship with her children. There is no evidence that termination of Cathy's parental rights would be more detrimental to the children than preserving the relationship. The children are at risk of harm if returned to Cathy and Lester's care.

For these reasons, we affirm the judgment of the juvenile court.

**AFFIRMED ON BOTH APPEALS.**