# IN THE COURT OF APPEALS OF IOWA

No. 19-1246
Filed September 25, 2019

**IN THE INTEREST OF J.N.,**
**Minor Child,**

**D.K., Mother,**
    Appellant.
_____

Appeal from the Iowa District court for Johnson County, Jason A. Burns,

District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Don W. Schroeder, Iowa City, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

Brian D. Johnson of Jacobsen, Johnson, & Wiezorek, P.L.C., Cedar Rapids,

attorney and guardian ad litem for child.

Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

In July 2019, the juvenile court terminated D.K.'s parental rights to J.N., her youngest child born in 2017, under Iowa Code section 232.116(1)(h) (2019).[1] The mother appeals the order, asserting that the State failed to prove the ground for termination and that termination is not in the child's best interests. She also contends the juvenile court should have granted her another six months to work toward reunification. Our review is de novo. *See In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).

Under Iowa Code chapter 232, parental rights may be terminated if: (1) a "ground for termination under section 232.116(1) has been established" by clear and convincing evidence, (2) "the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights," and (3) none of the "exceptions in section 232.116(3) apply to preclude termination of parental rights." *In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018).[2] The juvenile court can also defer termination of parental rights if "specific factors, conditions, or expected behavioral changes" lead the court to "determin[e] that the need for removal of the child from the child's home will no longer exist at the end of [an] additional six-month period." Iowa Code § 232.104(2)(b). In determining whether termination of parental rights is in a child's best interests, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child,

---

[1] The father does not appeal.

[2] Although the juvenile court must address all three steps in terminating a parent's parental rights, we will not address any step on appeal a parent does not specifically challenge. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010); *see also* Iowa Code § 232.116(1)-(3).

and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2).

"A parent does not have an unlimited amount of time in which to correct his or her deficiencies." *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997). The "legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). After statutory timelines have run, the children's best interests are promoted by termination. *See In re S.N.*, 500 N.W.2d 32, 35 (Iowa 1993). Simply put, children are not equipped with pause buttons, and they cannot wait indefinitely for stable parents. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (noting children must not be deprived permanency on the hope that someday the parent will be able to provide a stable home); *D.W.*, 791 N.W.2d at 707.

Iowa Code section 232.116(1)(h) allows the court to terminate parental rights if a child (1) is three years old or younger, (2) has been adjudicated a child in need of assistance (CINA), (3) has been out of the parent's custody for at least six of the last twelve months and any trial period at home has been less than thirty days, and (4) cannot be returned to the parent at present without continued risk of adjudicatory harm. The mother does not dispute the State proved the first three elements; indeed, those elements are clear from the record. Rather, she challenges only the element that the children cannot be returned to her at present. *See id.* § 232.116(1)(h)(4). Upon our de novo review, we find the State proved that element of paragraph (h) with clear and convincing evidence.

As the juvenile court noted in its July 2019 ruling, the mother has a history of involvement with the Iowa Department of Human Services (DHS):

> Over the last two years, [the mother] has not been able to demonstrate stability or sobriety. Just prior to the birth of [her youngest child] . . . , a hair test was done on [the mother] by DHS. This test showed that she was positive for . . . methamphetamine.

The child was removed from the mother's care in August 2018 after the child and his older siblings—not at issue—were left unsupervised and the mother could not be contacted. The child had been in a dirty diaper for more than twenty-four hours, and all the children were outside and dressed inappropriately. After removal, the child's hair was tested and found positive for methamphetamine. The child was adjudicated a CINA. The child was placed in family foster care, where he has since remained.

At the termination-of-parental-rights hearing, the mother testified she did not believe she currently had a drug problem. She claimed she tested positive for methamphetamine in 2017 because she was in an area where methamphetamine had been used. She maintained her children's positive test results were caused by her boyfriend's friend's use of methamphetamine while she and the children were staying at that friend's home. She was arrested in November 2018 for possession of methamphetamine; she denied that the methamphetamine and steel pipe found in a backpack left where she was sitting was hers, though she admitted the wallet inside the bag *was* hers. The mother only admitted she had used methamphetamine for a time before the child was born and again on December 31, 2018, or January 1, 2019.

From initiating the case in August 2018 to the termination-of-parental-rights hearing in May 2019, the mother had made three attempts at substance-abuse treatment—two inpatient and one intensive outpatient programs—but did not complete any of the programs. She had stopped attending the last program altogether by the end of January 2019. She also stopped participating in drug testing—which the juvenile court has ordered—at the end of January, claiming a sweat-patch test that was positive for methamphetamine was a false positive.

At the termination-of-parental-rights hearing, the mother still questioned whether she needed substance-abuse treatment, but she testified she recently was accepted into another inpatient program in a neighboring city and was moving there that day. The mother was unsure of the program's conditions for her living there or the overall details, but she believed the child could be placed there with her immediately. She thought that this new program would be helpful—unlike the prior programs—and that she was in a better head-space than she had been. She requested six more months for reunification.

The juvenile court was not persuaded:

> To put it bluntly, her excuses and explanations, in the court's opinion, are simply that—excuses. She first started using marijuana at age eleven and methamphetamine at age seventeen. She associates with people known to be methamphetamine users and, in the case of [the child's] father, manufacturers of methamphetamine. Throughout her history with DHS, methamphetamine has been a constant concern. Her children have repeatedly tested positive for methamphetamine when left in her care. Though she rarely drug tests, some of her results have returned positive. She admits to recent usage of methamphetamine. She has failed each treatment program that she has started. Though she qualifies and recants her statements now, DHS has reported that she has expressed frustration with the drug testing requirements and stated that methamphetamine should be legal. Her behaviors and associations clearly demonstrate to the court that she is a user of

methamphetamine and she has refused or been unable to achieve treatment and sobriety while under DHS supervision.

Upon our de novo review of the record, we agree with the juvenile court's assessment. The mother's lack of participation in addressing her substance-abuse issues as well as her mental-health issues evidence the child could not be returned to the mother's care at the present time. And the mother waited until just before the termination-of-parental-rights hearing to act, and nothing in the record supports the mother's claim that this new program will have a different result, particularly since she still will not admit to having a problem. We agree with the juvenile court that the State proved the child could not be returned to the mother's care at the present time.

Additionally, considering the child's safety; the best placement for furthering the long-term nurturing and growth of the child; and the child's physical, mental, and emotional condition and needs, we find termination of the mother's parental rights is in the child's best interests even though the mother and child may share a bond. We agree with the court-appointed special advocate that the mother "is a loving and caring parent but has not made the right decisions for [the child's] wellbeing." As the juvenile court stated: "Love, however, is not enough to provide safety and stability for a child." This child has need for permanency, and the statutory time for reunification passed with no progress on the mother's part. To delay the child's permanency in favor of the mother is not in the child's best interests. And like the juvenile court, we cannot conclude the need for removal would no longer exist at the end of another six-month period.

Here, the State established by clear and convincing evidence the ground for termination set forth in Iowa Code section 232.116(1)(h), the record evidences that termination of the mother's parental rights is in the child's bests interests, and no facts in the record suggest a six-month delay would lead to safe reunification. So we affirm the juvenile court's ruling terminating the mother's parental rights.

**AFFIRMED.**