# IN THE COURT OF APPEALS OF IOWA

No. 19-1128
Filed November 27, 2019

**IN THE INTEREST OF D.F.,**
**Minor Child,**

**K.S., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Page County, Amy Zacharias, Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

C. Kenneth Whitacre, Glenwood, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Justin Wyatt of Woods & Wyatt, PLLC, Glenwood, guardian ad litem and attorney for minor child.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**DOYLE, Presiding Judge.**

A mother appeals the termination of her parental rights. Upon our review, we affirm the juvenile court's ruling.

### I. Background Facts and Proceedings.

K.S. is the mother and B.F. is the father of D.F., born in July 2015.[1] The mother has a long history of alcohol and illegal-substance abuse, beginning before the child's birth and continuing thereafter. She also has a long history of involvement with the Iowa Department of Human Services (DHS).

The most recent case began after law enforcement received a report that a small child had been seen "wandering lost" in June 2017. The toddler had let himself out of the mother's home when she fell asleep and was found by the railroad tracks, alone. The mother told the DHS child-protection worker the child had also gotten out a few weeks prior while she was sleeping—the child having been found outside by himself when a visitor arrived. Notably, a prior child-in-need-of-assistance (CINA) case involving the family had only been closed a few months. In October 2017, the child was adjudicated a CINA.

Not much later, the toddler was observed alone riding his tricycle in the street by a law enforcement officer. The child returned to his residence, about a block away, and the officer could see the door was partially open. The officer spoke to the father and learned the child got out of the father's home when the father dozed off.

---

[1] The termination of the father's parental rights is not at issue in this appeal. We also note the mother has other children that are not at issue in this appeal.

At the dispositional hearing held in November 2017, the juvenile court removed the child from the parents' care. The court advised the parents:

> [Unfortunately,] since this is the second time we are here, the two of you have probably earned more skepticism by the parties in the case as well as the court in terms of what you say you have done and what those results are. And so I don't mean to indicate that you are necessarily out-and-out lying to the court or to those workers, but certainly us verifying those things is more important this time around and even maybe more than it was the first time around. So I guess I just encourage you that if you have done those things that are negative, make sure your releases are signed, make sure that you're taking responsibility for that as well. What I mean is if you know you had a negative screen, report it to them, report it to [the service providers or DHS case workers] about being sure it's sent to them. Have a little ownership and take some responsibility for those things too to make sure that they do get reported to them so that you know we all have that information.

The mother then admitted she had started drinking again. The court praised her honesty and stated:

> Obviously in this courtroom the goal is to acknowledge what the problem is, figure out what to do to fix it, and get to a point where it is fixed and [the child] is back in your care and we can close the case successfully and not see you again.
>
> So I think, . . . the fact that you have admitted that is a great first step and to continue with your treatment then.
>
> . . . .
>
> Having been here before, obviously, with having had [the child] removed, both of you know that if he is removed from your care for a certain period of time, the State can file a petition to terminate your parental rights.
>
> . . . .
>
> And I will say, he just turned two in July. So what that means is the removal starts from today's date, but the law says that within six months we can change those goals. That isn't a very long period of time. I don't have to, at that time, and until we get to a point where we have that permanency hearing, by law . . . that goal is still reunification. So I don't want you to think she's telling me that or give up or anything like that. Certainly if we get back here in six months and you are in a place where you're doing well and you made progress, I have the ability not to have that permanency hearing or to grant you additional time.

The mother proceeded with treatment and was successfully discharged from it. Although there were concerns the mother was drinking or abusing substances, the mother denied use. At the permanency hearing in August 2018, things were progressing. The mother maintained she was following all of the DHS's recommendations, and, although she had missed a few drug screens, the court granted additional time for reunification.

At the end of August 2018, the mother was in a car accident and sustained extensive injuries. The accident was alcohol-related. After the accident, the mother reported "drinking approximately four times per month." She admitted she was drinking vodka but claimed she would "sip" rather than "slam" while drinking. The mother said the accident was her wake-up call; she had hit rock bottom and was ready to commit to sobriety. At the permanency review hearing in November 2018, the mother admitted she had been through inpatient treatment, including in another case in which her parental rights to another child were terminated, but she maintained she had not been "fully ready" for treatment. She was not "wholeheartedly into it" previously, and she said she was now ready for treatment. She asked the court to give her three more months to prove she was dedicated to sobriety. The court found no more additional time was warranted, and the court directed the State to petition for termination of the mother's parental rights.

Following a termination-of-parental-rights hearing in April 2019, the juvenile court terminated the parents' parental rights. In a well-written ruling, the court explained that while the mother

> has done well at times with substance abuse treatment, she completely lacks any ability to ask for help or really acknowledge her problem until confronted. Throughout the life of this case, it is replete

with examples of [the mother] making bad choices and ONLY owning up to them when DHS finds out. She has not once called DHS or a provider and told them about her lapses in judgment in the hopes to do better next time. She continues to hide her choices and then pretend as if it did not happen until confronted. The latest example of this is purchasing wine in February 2019. This seems benign enough except for a person who is an alcoholic and should not be buying alcohol. [The mother] only admitted to purchasing the alcohol and then "pouring it out" when she was confronted. The court does not believe that [the mother] has been sober for seven months, since her car accident, as she claims. She agreed to attend continuing care . . . after graduating in January 2019 [from in-patient treatment], but according to [the DHS caseworker, the mother] has not followed through with this continuing care. Alcohol is a hard substance for which to test. [The DHS caseworker] testified that the lab the DHS uses only detects alcohol if consumed in the last six to eight hours.

[The child] is three years old and has been out of his parents' care more than he has been in it. They have not demonstrated the ability to safely care for [the child]. Neither parent has moved past semi-supervised visitation . . . . How long must [the child] wait for his parents to put him first?

The mother now appeals the juvenile court's ruling terminating her parental rights. She contends the State failed to prove the grounds for termination of her rights and termination of her parental rights was not in the child's best interests. Our review is de novo. *See In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).

## II. Discussion.

Under Iowa Code chapter 232 (2018), parental rights may be terminated if: (1) a "ground for termination under section 232.116(1) has been established" by clear and convincing evidence, (2) "the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights," and (3) none of the "exceptions in section 232.116(3) apply to preclude termination of parental rights."

*In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018).[2] The juvenile court can also defer termination of parental rights if "specific factors, conditions, or expected behavioral changes" lead the court to "determin[e] that the need for removal of the child from the child's home will no longer exist at the end of [an] additional six-month period." Iowa Code § 232.104(2)(b). In determining whether termination of parental rights is in a child's best interests, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2).

"A parent does not have an unlimited amount of time in which to correct his or her deficiencies." *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997). The "legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). After statutory timelines have run, the child's best interests are promoted by termination. *See In re S.N.*, 500 N.W.2d 32, 35 (Iowa 1993). Simply put, a child is not equipped with a pause button, and he or she cannot wait indefinitely for stable parents. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (noting children must not be deprived permanency on the hope that someday the parent will be able to provide a stable home); *D.W.*, 791 N.W.2d at 707.

---

[2] Although the juvenile court must address all three steps in terminating a parent's parental rights, we will not address any step on appeal a parent does not specifically challenge. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010); see also Iowa Code § 232.116(1)-(3).

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to address grounds for termination under section 232.116(1)(h), which allows the court to terminate parental rights if a child (1) is three years old or younger, (2) has been adjudicated a CINA, (3) has been out of the parent's custody for at least six of the last twelve months and any trial period at home has been less than thirty days, and (4) cannot be returned to the parent at present without continued risk of adjudicatory harm. The mother does not dispute the State proved the first three elements; indeed, those elements are clear from the record. Rather, she challenges only the element that the child cannot be returned to her at present. *See id.* § 232.116(1)(h)(4). Upon our de novo review, we find the State proved that element of paragraph (h) with clear and convincing evidence.

The mother is an alcoholic, and despite years of treatment and the birth of a child, she has not abstained from alcohol. As the juvenile court found, the record evidence shows the mother has continued to use alcohol while denying its use. After the juvenile court granted her additional time for reunification, she was in a horrific accident caused by alcohol use. She claimed she had turned over a new leaf and was dedicated to sobriety; yet, she was seen buying alcohol and only admitted it when she was caught.

Throughout the case, the mother pointed to her clean drug screens as evidence she was sober. But as alcohol does not stay in the body long, testing for it is difficult. We do not believe we can rely on the clean tests as evidence the mother was sober but for a few minor relapses. The juvenile court stressed to the

parents at the dispositional hearing how important it was for them to take ownership of their failures so that they could learn and fix those mistakes. Sadly, the mother did not heed the court's advice. We recognize alcoholism is a terrible disease, but our focus must be on the child's best interests. Here, the evidence overwhelmingly shows the juvenile court went above and beyond to give the mother time to show she could stay sober and safely parent the child, but she was unable or unwilling to do so.

Upon our de novo review of the record, we find the State proved the child could not be safely returned to the mother's care at the time of the termination-of-parental-rights hearing given her relapses and dishonesty about her use during the CINA proceedings. The child has been out of the mother's care for most of his life, and he should not have to wait for the mother to put the child's needs before her need for alcohol. We do not think the child should suffer in limbo any further. We agree with the juvenile court that termination of the mother's parental rights is in the child's best interests, and the bond between the parent and child does not outweigh the child's need for permanency, given the time the mother was provided and her long history of alcohol use. For those reasons, we agree with the juvenile court that no additional time was warranted. So we affirm the juvenile court's ruling in all respects.

**AFFIRMED.**