**IN THE COURT OF APPEALS OF IOWA**

No. 22-1749
Filed January 25, 2023

**IN THE INTEREST OF K.P.,**
**Minor Child,**

**S.P., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

David R. Fiester, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Crystal L. Usher of Nazette, Marner, Nathanson & Shea L.L.P., Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Ahlers and Buller, JJ.

**AHLERS, Judge.**

The juvenile court terminated a mother's and father's parental rights to their child. Only the mother appeals. She challenges the statutory grounds authorizing termination and argues termination is not in the child's best interest due to her strong bond with the child.[1]

We conduct de novo review of orders terminating parental rights. *In re Z.K.,* 973 N.W.2d 27, 32 (Iowa 2022). Our review follows a three-step process that involves determining if at least one statutory ground for termination has been established, whether termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.,* 957 N.W.2d 280, 294 (Iowa 2021).

We first address the mother's challenge to the statutory grounds. The court terminated under section 232.116(1)(h) (2022). This ground permits termination upon proof that (1) the child is three years of age or younger; (2) the child has been adjudicated a child in need of assistance; (3) the child has been removed from the physical custody of the child's parents for at least six of the last twelve months; and (4) the child cannot be safely returned to the custody of the child's parents at the time of the termination hearing. Iowa Code § 232.116(1)(h); *In re A.S.,* 906 N.W.2d 467, 473 (Iowa 2018) (interpreting the use of the phrase "at the present

---

[1] To the extent the mother intends to appeal the juvenile court's refusal to hold a hearing on her Iowa Rule of Civil Procedure 1.904 motion or reopen the record, we conclude she did not sufficiently develop an argument for our review. *See In re E.W.,* No. 22-0647, 2022 WL 2347196, at *2 (Iowa Ct. App. June 29, 2022) (finding an issue waived when the parent failed to develop a supporting argument). For the same reason, we do not address the mother's passing reference to a request for additional time.

time" in section 232.116(1)(h)(4) to mean at the time of the termination hearing). The mother limits her challenge to the fourth element.

Following our de novo review of the record, we agree with the juvenile court that the child cannot be safely returned to the mother's care. We reach this conclusion in part based on the mother's admission during her testimony that the child could not be returned to her care. While that admission largely ends the discussion on this issue, we note there are numerous details that support the mother's admission. The underlying impediment to the mother's ability to adequately parent the child is her intellectual disability. While this disability itself is not a ground for termination, the disability prevents her from carrying out her duties of caring for the child, which is a ground for termination. *See In re S.N.*, 500 N.W.2d 32, 34 (Iowa 1993) ("[A] parent's mental health does not constitute a defense against termination of parental rights where the condition prevents the parent from carrying out his or her duty of caring for the child."). Evidence shows that she is "a high-needs adult, [who] rel[ies] on visual cues, verbal prompts, and support workers to complete daily tasks." She is not able to multitask and has difficulty maintaining her own care. She relies on a "chore chart" to know what basic tasks need to be completed. She also requires visual reminders placed around the home, like "take shower"; "take meds"; and "brush teeth." The condition of the mother's home has been an ongoing concern. A social worker explained at one point her home was "unclean to a degree of being unsafe" and "hazardous." We fear it will quickly revert to that condition based on her past behavior and personal care limitations.

During visits with the child, the family support specialist (FSS) has had to intervene to keep the child safe and encourage the mother to focus on the child rather than her phone. For example, the FSS had to stop the child from rooting through the trash and putting things in his mouth. A separate FSS had to intervene after the child pulled a television off a stand, hitting the child's head. Even after the FSS has identified safety hazards and gone over them with the mother, the mother is not able to recognize hazards on her own.

The mother also does not fully appreciate the safety risks other people may pose to the child. When this case began, the mother lived with her own mother, who was using methamphetamine. The child also tested positive for methamphetamine. As a result, a safety plan was developed that did not permit the maternal grandmother to be in the home. Despite this, the mother permitted the maternal grandmother to stay with her shortly after her visits with the child moved from fully to semi-supervised. The mother returned to fully-supervised visits as a result.

Considering these facts and the demands of caring for a young child, we conclude the child could not be safely returned to the mother. Accordingly, the only contested element of section 232.116(1)(h) is satisfied.

We turn to steps two and three in our analysis. The mother conflates step two, our best-interests determination,[2] with step three, whether we should apply

---

[2] When making a best-interest determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.,* 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)).

an exception to termination, so we address these issues in tandem. The mother argues that termination is not in the child's best interests due to the bond between parent and child.[3] However, the burden of establishing a permissive exception to termination rests with the parent. *A.S.*, 906 N.W.2d at 475–76. The mother never raised her bond with the child as possible grounds to forgo termination, so her claim is not preserved for our consideration. *See E.W.*, 2022 WL 2347196, at *3. Nonetheless, we note the record does not reveal a sufficiently strong bond between parent and child that would justify forging termination. Further, there is no persuasive evidence that terminating the mother's rights would be detrimental to the child. In fact, the FSS noted the child is the happiest when with his foster family. We conclude termination is in the child's best interests, and no permissive exception should be applied to forgo termination. The child deserves stability and permanency. Those goals can best be achieved through termination.

**AFFIRMED.**

---

[3] Section 232.116(3)(c) allows the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."