# IN THE COURT OF APPEALS OF IOWA

No. 19-1880
Filed March 4, 2020

**IN THE INTEREST OF A.P.,**
**Minor Child,**

**D.P., Mother,**
　　　　Appellant.
_____

　　　　Appeal from the Iowa District Court for Pottawattamie County, Eric J. Nelson, District Associate Judge.


　　　　A mother appeals the termination of her parental rights.  **AFFIRMED.**


　　　　Ryan M. Dale, Council Bluffs, for appellant mother.

　　　　Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

　　　　Maura Goaley, Council Bluffs, attorney and guardian ad litem for minor child.


　　　　Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**DOYLE, Judge.**

A mother appeals the termination of her parental rights by the juvenile court. Upon our de novo review, *see In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019), we affirm.

### I. Background Facts and Proceedings.

D.P. is the mother of A.P., born in August 2018. The mother has a history of methamphetamine use, which has required intervention by the Iowa Department of Human Services (DHS) in the past. In 2016, a child-in-need-of-assistance (CINA) case involving an older child—not at issue here—was opened related to the mother's methamphetamine use; it closed after that child was placed in a familial guardianship. Sadly, the mother's lack of sobriety remains a concern.

A.P. tested positive for methamphetamine and barbiturates at birth and was removed from the mother's care. In November 2018, the child was adjudicated a CINA, and the mother was directed to participate in reunification services offered by the DHS, including random drug testing as well as completion of substance-abuse and mental-health evaluations with follow through with the recommendations.

The mother first received drug testing through sweat patches, which tested positive for methamphetamine. Despite the test results, the mother denied using methamphetamine, claiming the positive result was caused by prescription medication. The mother was told to get a letter from her physician about her prescription, but she failed to do so. The mother requested the DHS provide a combination of urinalysis and sweat-patch testing, and the mother's request was granted. But her later urine screens also tested positive for methamphetamine.

She failed to show for patch and urine testing many times. Yet the mother continued to deny use.

It was not until February 2019 that the mother was admitted to an inpatient substance-abuse treatment program. The mother was voluntarily but unsuccessfully discharged from the treatment program in early April 2019. The mother "expressed . . . she was still motivated to work [on] substance abuse treatment in an outpatient setting." But again, she missed several requested drug screens.

The State petitioned for termination of the mother's parental rights in July 2019. Following a hearing, the court terminated her parental rights. She now appeals.

## II. Discussion.

Under Iowa Code chapter 232 (2019), parental rights may be terminated if these three conditions are true: (1) a "ground for termination under section 232.116(1) has been established" by clear and convincing evidence, (2) "the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights," and (3) none of the "exceptions in section 232.116(3) apply to preclude termination of parental rights." *In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018). Here, the mother challenges the juvenile court's determination that all three conditions were met. She also asserts she was not provided reasonable services for reunification. We begin with the latter claim.

### A. Reunification Services.

When a child is removed from the home, the DHS must "make every reasonable effort to return the child to the child's home as quickly as possible

consistent with the best interests of the child." Iowa Code § 232.102(9); *accord In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("The State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent."). Reasonable efforts are those efforts made to eliminate the need for removal of the child or make it possible for the child to return home. Iowa Code § 232.102(12)(a). The DHS must balance its obligation to make reasonable efforts with its obligation to protect a child from harm. *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). The DHS has to supply only those services that "are reasonable under the circumstances." *In re S.J.,* 620 N.W.2d 522, 525 (Iowa Ct. App. 2000) (citation omitted). So, what constitutes "reasonable efforts" depends on the circumstances of each case. *See C.B.*, 611 N.W.2d at 493. Furthermore, a "parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing." *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005); *see also In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (citations omitted).

On appeal, the mother asserts she preserved error on her claim on the State's failure to make reasonable efforts because she requested the child be placed with her at the treatment facility in February 2019. She also asserts she should have been provided additional transportation services. Even if we assume, without deciding, the mother raised these issues before the juvenile court sufficiently to preserve the claim for our review, the record is abundantly clear that the State provided the mother the requisite services for reunification.

This is not the mother's first CINA case. There is no question the mother knew what she needed to do to be reunified with the child—abstain from substance

abuse. The juvenile court declined the mother's request to place the child with her at the treatment facility because the mother had only just admitted she had been using methamphetamine, despite the child's extreme test results at birth and the mother's many positive test results after initiation of the present CINA case. Nothing in the record suggests that had additional transportation been offered, the mother would have committed to sobriety. Under the circumstances of this case, it is clear the State met its burden of providing reasonable services to the mother for reunification with the child.

### B. *Grounds for Termination.*

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Here, we focus on Iowa Code section 232.116(1)(h), which allows the court to terminate parental rights if a child (1) is three-years old or younger, (2) has been adjudicated a CINA, (3) has been out of the parent's custody for at least six of the last twelve months and any trial period at home has been less than thirty days, and (4) cannot be returned to the parent at present without continued risk of adjudicatory harm. The mother does not dispute the State proved the first three elements; indeed, those elements are clear from the record. Rather, she appears to challenge only the element that the child cannot be returned to her at present. *See* Iowa Code § 232.116(1)(h)(4); *see also In re C.F.-H.*, 889 N.W.2d 201, 206 (Iowa 2016) (explaining "[t]he words 'resume' and 'returned' imply restoration of a previous custody situation"); *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (determining that "[a]t the present time" refers to the time of the termination hearing). Upon our de

novo review, we find the State proved that element of paragraph (h) with clear and convincing evidence.

At the termination-of-parental-rights hearing, there was no evidence the mother had stopped using methamphetamine, the issue that led to the child's removal and CINA adjudication. The mother suggests her issues would have been resolved had she been given additional transportation resources. But nothing in the record supports this claim. The mother used methamphetamine before the child was born, and she continued to use afterwards. We agree with the juvenile court the State proved the child could not be returned safely to the mother at the time of the termination-of-parental-rights hearing.

### C. *Best Interests, Permissive Factors, and Additional Time.*

"If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights." *In re D.W.*, 791 N.W.2d 703, 706-07 (Iowa 2010). In making the "best interests" determination, our primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code § 232.116(2)). The "defining elements in a child's best interest" are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted). Additionally, even if the court determines termination is in a child's best interests, it may decline to terminate a parent's parental rights if one of the permissive factors set forth in Iowa Code section 232.116(3) applies. *See also A.S.*, 906 N.W.2d at 475.

Here, the mother argues termination of her parental rights is not in the child's best interests because she "has made a lot of progress and should be given an additional six months." *See* Iowa Code § 232.104(2)(b) (allowing the court to continue placement of the child for six more months if it determines "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). She further argues the court should decline to terminate her parental rights because doing so would harm the child because of the closeness of the parent-child relationship. *Id.* § 232.116(3)(c).

Upon our de novo review of the record, we agree with the juvenile court that termination of the mother's parental rights is in the child's best interests and the child's need for permanency is not outweighed by the mother's close relationship to the child, nor would the situation be resolved by granting the mother additional time for reunification. This is not the mother's first case with DHS. As in her 2016 case, the mother was given resources and services for reunification. By all accounts, she is a caring mother who does well with the child in their supervised visits. The child is happy to see her at those visits, and the two share a bond. That is not the problem here. The continuing issue is that the mother is either unwilling or unable to commit to sobriety and put the child's needs before her own. The mother's history of use and involvement with the DHS, along with her failure to admit her use at the start of this case—despite continued positive drug screens—hurt the child's needs.

"A parent does not have an unlimited amount of time in which to correct his or her deficiencies." *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997). The "legislature has carefully constructed a time frame to provide a balance

between the parent's efforts and the child's long-term best interests." *D.W.*, 791 N.W.2d at 707. So after statutory timelines have run, the child's best interests are promoted by termination. *See In re S.N.*, 500 N.W.2d 32, 35 (Iowa 1993). Simply put, children are not equipped with pause buttons, and they cannot wait indefinitely for stable parents. *See A.M.*, 843 N.W.2d at 112 (noting children must not be deprived permanency on the hope that someday the parent will be able to provide a stable home); *In re T.J.O.*, 527 N.W.2d 417, 422 (Iowa Ct. App. 1994) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable."); *In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems.").

No question that achieving sobriety after years of substance abuse is difficult, and the statutory time-frame of six months passes quickly. Even so, the focus in CINA cases has to be the best interests of the child, not the parent. The mother knew what was at stake. She chose to deny using methamphetamine when she could have been receiving treatment. She chose to keep using methamphetamine. Over a year passed between the child's removal and the termination hearing. The child should not have to wait any longer in the hope the mother might stop using, particularly since nothing in the record shows she has committed to sobriety. Under these facts, termination of the mother's parental rights is in the child's best interests. And we decline to apply a permissive factor to avoid terminating parental rights under these facts. *See A.S.*, 906 N.W.2d at 475. The mother's close relationship and bond with the child has not stopped her

use of methamphetamine, and there is no evidence that will change with additional time.

### III. Conclusion.

Upon our de novo review of the record, we find the State provided reasonable reunification services to the mother as required in chapter 232, and the State proved by clear and convincing evidence grounds for terminating her parental rights under section 232.116(1)(h). We also conclude termination of her parental rights is in the child's best interests and those interests are not served by granting additional time for reunification or application of a permissive factor to avoid termination. For all these reasons, we affirm the juvenile court's order terminating the mother's parental rights in all respects.

**AFFIRMED.**