**IN THE COURT OF APPEALS OF IOWA**

No. 20-1198
Filed November 30, 2020

**IN THE INTEREST OF W.E. and D.J.,**
**Minor Children,**

**J.E., Father,**
 Appellant.
_____

 Appeal from the Iowa District Court for Sioux County, Daniel P. Vakulskas,

District Associate Judge.

 The father appeals the juvenile court order terminating his parental rights to

the children. **AFFIRMED**.

 Jared Weber, Orange City, for appellant father.

 Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

 Debra S. De Jong of De Jong Law Firm, P.C., Orange City, attorney and

guardian ad litem for minor children.

 Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

The State sought to terminate the parental rights of the mother and father of W.E. (born in 2012) and D.J. (born in 2014). When the father arrived for the termination hearing, he was met by a law enforcement officer with a mental-health commitment pick-up order in hand. *See* Iowa Code § 229.11(1) (2019) (permitting the court to order a person alleged to be seriously mentally impaired to be taken into custody and detained pending evaluation and a hearing). In spite of the father's request to be allowed to remain in the courtroom with the deputy sheriff to participate in the termination hearing, his request was denied and he was whisked away pursuant to the pick-up order.

The hearing proceeded in the father's absence, although the juvenile court granted his later request to reopen the record and permitted him to appear on a later date to testify. The juvenile court then terminated the rights of both parents. They both appealed. Our court affirmed the termination of the mother's parental rights but reversed the termination of the father's rights, finding the exclusion of the father from the hearing violated his right to fully participate in the hearing as required by *In re M.D.*, 921 N.W.2d 229, 236 (Iowa 2018). *See In re W.E.*, No. 19-2109, 2020 WL 1550699, at *2–4 (Iowa Ct. App. Apr. 1, 2020).

On remand, the juvenile court again terminated the father's parental rights. He appeals.

I. **Standard of Review**

"We review proceedings terminating parental rights de novo." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa

2014)). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.*

## II.    Discussion

The father asserts (1) the State failed to prove a statutory ground for termination, (2) termination is not in the children's best interest, and (3) he should have been given additional time to work toward reunification. We address each of these issues in turn.

### A.    Statutory Grounds

The juvenile court terminated the father's rights pursuant to Iowa Code section 232.116(1)(d), (e), and (f) (2020). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). At the termination hearing, the State argued paragraph (f) was the ground that best fit the situation. We agree and choose to review on that ground alone.

Iowa Code section 232.116(1)(f) permits the juvenile court to terminate a parent's rights if it finds:

> (1)  The child is four years of age or older.
> (2)  The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3)  The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4)  There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The father challenges only the fourth of these elements. In support of this challenge, the father highlights the fact he has maintained stable employment, is financially able to provide for the children, and has a suitable house for himself and the children.

While the facts highlighted by the father are all favorable points, they overlook the fundamental problems that resulted in continued involvement of the Iowa Department of Human Services (DHS) and termination of the father's parental rights. Those problems are his unchecked mental-health problems and his propensity for domestic violence. The father tries to minimize these issues by quibbling over the diagnoses he received from various mental-health care providers. However, it is not the diagnosis of or the label on his conditions that kept his case on the path to termination; it is how those conditions manifested themselves. *See In re S.N.*, 500 N.W.2d 32, 34 (Iowa 1993) (holding mental illness in and of itself is not a ground for termination of parental rights but failure to carry out parental duties as a result of mental illness permits termination). His conditions were severe enough that one of his mental-health care providers expressed discomfort being alone with him. He focused on conspiracy theories and suffered from persecutory delusions that his house was "bugged" with listening devices, drones were flying over his house to conduct surveillance, his vehicles were being tampered with, and others were out to get him. This led to the initiation of mental-health commitment proceedings against the father at the request of his health care providers. While the commitment proceeding was dismissed following a hearing on the basis the State failed to prove a recent overt act that the father was a danger to himself or others, the dismissal order noted the father had been diagnosed with

paranoid schizophrenia following an evaluation. His paranoid behavior continued throughout the months leading up to the second termination hearing following remand, including expression of beliefs the police were planting thoughts in his head and unknown persons were surreptitiously removing footage on a nightly basis from cameras he installed around his house in his effort to prove others were out to get him. This rather bizarre behavior was not lost on the children. One of the children reported concerns during therapy sessions that the father was seeing things that were not there.

There was other behavior harmful to the children. Before the father's visits were stopped due to his behavior, the father struggled to focus on the children during the visits. Instead, he would focus on the service providers and how they had supposedly wronged him, frequently broadcasting to the children his claims that the service providers and other authority figures were out to get him and the children. In spite of repeated efforts to redirect him, he would continue such behavior. The narrative of how the father behaved at visitation was corroborated to some extent by his conduct during the second termination hearing. The father would frequently wander off topic to express complaints about the various service providers and mental-health professionals involved in his case.

The father also cries foul over the fact the juvenile court denied his motion to reinstate visitation, which he filed nearly immediately following remand. Prior to the initial termination order, the father was only allowed fully supervised visitation due to concerns about the father's paranoia. Visitation was finally stopped altogether when law enforcement had to be called due to the father's delusional rants in front of the children about surveillance drones and conspiracies by service

providers. The father artfully attempts to isolate events since remand by pointing out that some of the complained-of behavior occurred leading up to the first termination hearing, not the second. We are not persuaded by this attempt to narrow the focus. We by no means hold it against the father that he had no contact with the children during the five-month period between the first termination ruling and the entry of our court's opinion reversing and remanding the case. Until reversal, the father had no right to see the children and the DHS had no obligation to provide services to the father. *See In re L.T.*, 924 N.W.2d 521, 528 (Iowa 2019) (concluding the DHS's obligation to provide reasonable efforts lasts until a written termination is filed). However, the remand did not result in a "reset," and the parties and the juvenile court were not writing on a blank slate on remand. The juvenile court found clear and convincing evidence to support termination of the father's parental rights in the initial termination order. Even though this termination order was reversed due to a procedural impropriety, the DHS and the juvenile court were not obligated to ignore the several-year history of unsuccessful efforts to provide the father with services needed to reunify with the children. Picking up where the case left off, it was appropriate for visitation to continue to be withheld because there had been no showing the father had gained the ability to safely and productively visit the children. *See id.* ("DHS's obligation to provide reasonable efforts until a final written termination order does not necessarily require DHS to provide reasonable efforts toward *reunification*").

Finally, the father focuses on the claimed progress he made during the four-month period between when the case was remanded and the second termination

hearing took place. He points to the therapy he underwent and a mental-health evaluation he undertook.

As for the therapy, the claimed progress appears to be largely a mirage. During that four-month period, the father had eleven therapy visits, which, understandably, did not convince the DHS or the juvenile court that the father's mental-health issues had been successfully addressed. We are also not persuaded the father adequately addressed his mental-health issues, particularly in light of the evidence that, even with the therapy, the father still did not accept the fact he had any mental-health problems that needed to be addressed. This lack of acknowledgment of a problem leaves the impression the father was simply going through the motions of therapy, and the father's lack of insight to his issues does not bode well for a future ability to be a safe care provider for the children. We also note the father was not addressing his domestic-abuse issues with his therapist.

As for the evaluation, the father submitted as an exhibit a report from a mental-health evaluator that gave no mental-health diagnosis other than to conclude the father's problems were related to a "child custody dispute." The father views this report as solid proof that any claims he has mental-health problems are false. On our de novo review, we are not convinced the report packs the persuasive punch claimed by the father. First, while the juvenile court had been involved for almost three years, the father had the evaluation conducted only seven days before the second termination hearing. Besides creating a time crunch by this eleventh-hour action, the father also failed to provide releases to the DHS to enable the service providers to contact the evaluator to ask questions or provide

background information. Second, the last-minute nature of the evaluation is exacerbated by the fact that, by the terms of the report itself, it is clear the evaluator did not have full or accurate background information about the father or his history of problems. Third, the conclusions in the report are inconsistent with large amounts of other persuasive evidence in the case about the father's long history of delusional behavior and denial of his issues. Given the lack of information provided to the evaluator, it is not surprising that the evaluator reached a conclusion that is inconsistent with the other evidence in the case. Due to these deficiencies in the nature, timing, and foundation of the report, it does not persuade us that the father's mental-health issues have been made up or embellished, as he claims.

Due to the fact the father has unmitigated mental-health issues, refuses or is unable to acknowledge the problem, and has delayed attempts to address them, we agree with the juvenile court's conclusion that the children could not be safely returned to the father's care at the time of the second termination hearing. Therefore, the State established statutory grounds for termination pursuant to Iowa Code section 232.116(1)(f).

### B. Best Interest

Having determined the statutory grounds for termination have been established, we must next assess whether termination of parental rights is in the children's best interest. *In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016). We do that by examining the framework set forth in Iowa Code section 232.116(2). *Id.* at 220.

All of the reasons previously discussed as to why the children cannot be returned to the father's care also support the conclusion termination is in the children's best interest. We will not repeat them here, but we will note additional reasons termination is in the children's best interest.

Prior to the father's visitation being stopped due to his behavior, the children would regress in their attitudes and behaviors following visits with the father. This is not surprising considering the father frequently used visitation time to criticize authority figures in front of the children rather than focusing on spending time with the children. The children have shown improvement now that they have more stability that is not disrupted by setbacks following visitation with the father.

We acknowledge the father's point that the children have had some instability due to changes of placement and resulting delays in finding a pre-adoptive home. However, nothing about those unfortunate disruptions causes us to hesitate to conclude termination is in the children's best interest. Those disruptions are most likely temporary, whereas the instability surrounding the father is of a longstanding nature.

## C.    Additional Time

The father requests additional time to work toward reunification. Iowa Code sections 232.104(2)(b) and 232.117(6) permit the court to enter an order giving a parent an additional six months to work toward reunification if the court does not terminate parental rights but still finds the child to be in need of assistance. However, in order to grant such a request, Iowa Code section 232.104(2)(b) requires that we be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the

determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." After our de novo review, we cannot identify any specific factors, conditions, or expected behavioral changes that cause us to determine the children could be placed in the father's home within the six-month period following the second termination hearing. The father's issues have not significantly improved in nearly three years, and there is no articulable reason to believe that will change within six months. *See A.M.*, 843 N.W.2d at 112 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010))).

## III.  Conclusion

On our de novo review, we find a statutory ground for terminating the father's parental rights, termination is in the children's best interest, and an additional six months will not alleviate the need for the children's removal from the father's care. As a result, we affirm the juvenile court.

**AFFIRMED.**